# Moses *v.* Philadelphia Mortgage and Trust Co. *et al.*

127 433
s131 560

*Bill in Equity to foreclose Deed of Trust securing Bonds.*

1. *Foreclosure of deed of trust; right of purchaser of bonds to maintain bill therefor; case at bar.*—A Real Estate Association issued a series of 80 bonds for $1,000 each, bearing interest at 6 per cent. per annum. To secure these 80 bonds, the association executed a deed of trust to a Mortgage and Trust Company, upon certain real estate owned by it, which was subject to an annuity of $450. Each of the bonds issued recited that it was one of a series of first mortgage bonds and was secured by a deed of trust to all of the real estate owned by said Real Estate Association, particularly described, and that said trust deed was "a valid lien upon all of said property subject only to an annuity charge of $450 per anuum, which is secured by a deposit with the said Philadelphia Mortgage Company, trustee, of the sum of $8,000 in cash, which, with its income, is so deposited for the purpose of securing the prompt payment of the annuity aforesaid." All of these bonds were sent to the trustee named in the deed of trust, to be sold for the account of the Real Estate Association. The trustee sold 72 of the bonds and accounted for their proceeds to the association, but never sold the remaining 8, but re-

28

tained them at the time of the filing of the bill. The mortgagor never deposited the $8,000 recited in the bonds as having been deposited. After the issuance of the bonds, the mortgagor paid the interest on those which had been sold, and also the annuity until the sale of its property under an execution, since which sale the purchaser has paid the interest on the said 72 bonds and also the annuity. Prior to the sale of the Association's property under execution, one M. bought from said Association the 8 bonds remaining with the trustee, but the trustee declined to deliver the bonds to him, claiming that it held them in lieu of the $8,000 in cash, which was not deposited with it by said Association as recited in the bonds, to meet the annuity. *Held*: That M., as purchaser of said 8 bonds, could not maintain a bill to foreclose the deed of trust and to require the del_very of said bonds to him by the trustee, without first making provision for the payment of the annuity, as stipulated in the said bonds issued and sold.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this case was filed by the appellant, Judah T. Moses, against the Philadelphia Mortgage & Trust Company and David Wright. The purposes of the bill and the facts disclosed therein are sufficiently set forth in the opinion.

The defendants interposed separate demurrers to the bill, assigning many grounds therefore, which may be summarized as follows: (1.) That the complainant has no ownership of the 8 bonds and no interest in the foreclosure of the mortgage. (2.) That the 8 bonds were deposited in lieu of the $8,000 cash for the benefit of the other bondholders. (3.) That these 8 bonds have never been sold by the mortgagor nor by the trustee. (4.) That the purpose of the mortgagor was to leave these 8 bonds with the trustee in lieu of the $8,000 cash, and complainant, being a transferee of said bonds is estopped to deny said purpose, and is estopped to deny the right of the mortgagor to agree to the $8,000 cash deposit. (5.) That the leaving of the 8 bonds with the trustee for three years and not depositing the cash, was an implied agreement on the part of the Montgom-

ery Real Estate Association to substitute the bonds for cash. (6.) That the mortgage provided for its foreclosure upon the request in writing of the owners of $50,000 of said bonds and coupons, and the bill shows they have not so requested. (7.) That Maria L. Sloan is not made a party. (8.) That complainant never paid any valuable consideration. (9.) That the 8 bonds are not shown not to have been registered. (10.) That complainant does not offer to pay back to Wright and Montgomery Real Estate Association the amount of annuity paid Mrs. Sloan, and does not offer to protect other bondholders against said annuity. (11.) That Wright bought subject to the 72 bonds alone. (12.) That the agreement alleged between the trustee, Wright, and the holders of the other 72 bonds is not alleged to be fraudulent and is not definitely alleged. (12.) No sufficient reason is given for removing the trustee and appointing a receiver.

The defendant also filed a motion to dismiss the bill for the want of equity. On the submission of the cause on the motion to dismiss and the demurrer, the chancellor overruled the motion to dismiss, but sustained the demurrer. From the decree sustaining the demurrer the complainant appeals, and assigns the rendition thereof as error.

WATTS, TROY & CAFFEY and CLIFFORD A. LANIER, JR., for appellant, cited *Lovelace v. Webb*, 62 Ala. 271; *Jones v. Blair*, 57 Ala. 457; *Collins v. Greene*, 67 Ala. 211; *Harper v. Howard*, 3 Ala. 284; *Lowrie v. Stewart*, 8 Ala. 163; *Savannah, &c. R. R. Co. v. Lancaster*, 62 Ala. 563; *Swift v. Stebbins*, 4 S. & P. 447-456; *Shaw v. Little Rock, &c.*, 100 U. S. 612; 2 Jones on Mortgages, § 1385; *Omaha Hotel Co. v. Wade*, 97 U. S. 13; *Brinkerhoff v. Beterick*, 88 N. Y. 52; *Ettlinger v. Passaic, &c.*, 142 N. Y. 189; *Chicago v. Fosdick*, 106 U. S. 47; *Berkman v. Hudson R. &c.*, 37 F. R. 146; 9 Encyc. Pl. & Pr. 286, notes 5 and 6; 288, note 7; pp. 291-2.

GRAHAM & STEINER and JOHN G. WINTER, *contra*, cited *C., D. & C. R. R. Co. v. Fosdick*, 106 U. S. 47; *Seibert v. M. & St. L. R. R. Co.*, 20 L. R. A. 535.

[Moses v. Philadelphia Mortgage and Trust Co. *et al.*]

TYSON, J.—In this case, the bill was filed by the appellant, claiming to be the owner of eight bonds issued by the Montgomery Real Estate Association of $1,000 each, secured by mortgage. The bill seeks a foreclosure of the mortgage and preliminary thereto, that the holder of these bonds, who is the trustee in the mortgage, be required to surrender them to him. A demurrer was sustained to the bill and this appeal is prosecuted to reverse that decree.

It appears that the mortgagor possessed certain real estate in the city of Montgomery subject to an annuity of four hundred and fifty dollars to one Sloane. That in October, 1888, it executed a deed of trust to the respondent, trustee, to secure eighty bonds of one thousand dollars each, bearing interest at six per centum, and due November 1, 1898. These bonds were sent to the trustee, in Philadelphia, to be sold for account of the mortgagor. In each of them it is recited that "this bond is one of a series of first mortgage bonds * * * amounting in all to the sum of $80,000, all of like tenor and date, and numbered from one to eighty inclusive, respectively, and is secured by a trust deed to all the real estate of said Montgomery Real Estate Association and particularly described as follows [describing the property], and said trust deed is a valid lien upon all of said property subject only to annuity charge of four hundred and fifty dollars per annum, which is secured by a deposit with the said Philadelphia Mortgage Company, trustee, of the sum of eight thousand dollars in cash, which *with its income* is so deposited for the purpose of securing the prompt payment of the annuity aforesaid, payable semi-annually during the life of Maria L. Sloan, the beneficiary," etc. It appears that the trustee sold seventy-two of the bonds and accounted for the proceeds to the mortgagor, but never sold the remaining eight, but retained the same, and still holds them. The mortgagor never deposited the eight thousand dollars cash recited in the bonds as being deposited. When the sale of the seventy-two bonds took place is not averred. It is stated, however, that the mortgagor, after the issuance of the bonds, paid the inter-

est on those which had been sold and also the annuity until the sale of its property under execution to one Wright in 1892, since which time, the purchaser has paid the interest on them and the annuity.

The appellant, it is averred, in 1891, for a valuable consideration, bought from the mortgagor the eight bonds remaining with the trustee, but he has been unable to obtain posession of them—the trustee refusing to deliver them, claiming to hold them in lieu of the eight thousand dollars in cash which was not deposited with it by the mortgagor as recited in the bonds to meet the annuity. It is alleged that the trustee has no right to do this.

The question is, whether or not the circumstances justify the retention of these bonds by the trustee. It is argued that there is nothing in the deed of trust about the deposit of cash to meet the annuity, and that the recital in the bonds was made by the directory without direction from the corporation. The bond is, in effect, a part of the trust deed, being a contemporaneous act and constituting, with the deed, but one transaction. The bonds are referred to in the deed as having been issued in accordance with the resolution of the corporation. This and the fact that they were sent to the trustee for sale and that they were put upon the market and sold and the proceeds received, with other circumstances, presently to be mentioned, dispel all doubt as to the corporation not being privy to and bound by the recital in the bonds. The fact that the corporation well knew of the existence of the lien upon its property for the annuity; that it warranted that the property was free from all incumbrances and its presumed knowledge of the difficulty of selling securities which were subject to a prior incumbrance, tend strongly to show that the corporation deliberately introduced the recital in the bond that the deposit of cash had been made to meet the annuity and intended in good faith to keep it. And we are of the opinion that in fact, it did in substance keep it. The recital, we may be pardoned for repeating, is that the cash "which with *its* income is so deposited for the purpose of securing the prompt payment of the

annuity aforesaid." It is clear that the intention was that the trustee was to invest the eight thousand dollars and from the *income* to pay the annuity. For how could cash yield an income without being invested ?

Bearing in mind that the only property owned by the mortgagor was that conveyed by the deed of trust, the reasonable inference is that the eight thousand dollars was to be derived from a sale of the bonds. Indeed, it might be said it was the only source to which the mortgagor could resort for the purpose of raising this sum consistent with business methods and in keeping with the recitals in the bonds and the mortgage.

There can be little doubt that if the trustee had sold the entire issue of bonds and retained eight thousand dollars of the proceeds as a deposit to meet the annuity, that the mortgagor would have had no right to recover it. For if the trustee had made sale of all the bonds and delivered the proceeds to the mortgagor without the indemnity provided for against the annuity, this would have been a fraud upon the purchasers of them, for which it would have been liable. The statement that the deposit had been made, certainly involves a promise, as between the mortgagor and trustee, that the mortgagor would make it. As to the purchasers of the bonds it was a representation both by mortgagor and trustee that it had been made, upon which they had a right to rely. Clearly, as against the purchasers of the seventy-two bonds it would be a fraud to permit either the mortgagor or the trustee to say that the deposit was not made.

It is not to be presumed that the trustees would have incurred this liability. Nor is it to be presumed that the parties to the transaction left so important an item open and unadjusted, in violation of a plain duty owing by the trustee to the purchasers of the bonds. Good faith and common prudence would have induced a present understanding. The reception by the mortgagor of the proceeds of the seventy-two bonds, and an acquiescence by it of the retention by the trustee of the eight bonds, to say the least of it, is a potent fact tending to show that there was some understanding between them.

All these circumstances, which are not negatived by the facts, omitting a consideration of the conclusion of the pleader, averred in the bill, support the conclusion that the mortgagor and the trustee understood and regarded the retention of the eight bonds as the equivalent of the $8,000 and an investment of it by the trustee in these eight bonds. For, if the trustee had sold the entire issue, retained $8,000 of the proceeds and then purchased eight of the bonds as it had the right to do, the transaction would not have been materially different as to the result, than a retention of the eight bonds without a sale of them. The failure of the trustee to adopt the circumlocutory method is of no consequence, since the result of the method adopted is the same as that which would have been accomplished had it retained $8,000 of the proceeds of the bonds and invested it in the eight bonds in controversy. Equity has regard for substance rather than form. Especially is this true when, if the mere form of the transaction is allowed to govern, the result would be to impute bad faith to one of the parties to the transaction and bestow upon that party an unconscionable advantage. Besides it would have entailed upon the parties the useless ceremony by the trustee of sending to the mortgagor the proceeds of all the bonds and an immediate return to it by the mortgagor of $8,000, or a retention by the trustee of $8,000 of the proceeds and an investment of it.

Leaving out of view all consideration of any understanding of a retention by the trustee of the bonds, the mortgagor could not after inducing the trustee to give credibility and circulation to the representation that the annuity was provided for by the deposit, recover the bonds without a compliance with that stipulation. While there was an implied promise on the part of the trustee to sell and account for the proceeds of the entire issue of bonds, there was a correlative promise on the part of the mortgagor to make the deposit. And, until the mortgagor makes good this promise, it cannot invoke the aid of a court of equity, to compel the trustee to fulfill its promise. Upon the plainest principle of equity, the mortgagor should not be permitted to im-

pose a liability upon its agent by depriving it of the bonds which it holds, and this, too, in plain violation of its own promise which it is unable to fulfill by reason of its insolvency—to say nothing of the unconscionable benefits to the mortgagor, and the fraud upon the holders of the seventy-two bonds, whose interest it is the duty of the trustee to protect.

The whole transaction was shortened and good faith kept between the parties by the sale of the seventy-two bonds and the retention of eight as an investment of the eight thousand dollars to meet the annuity.    We think  the facts disclosed in the bill force this conclusion, which is certainly promotive of justice and fair dealing, and the enforcement of the contract as made in spirit and substance, if not in form.

The appellant does not claim to be and it is evident that he is not a *bona fide* purchaser for value without notice.    He, therefore, stands in the shoes of the mortgagor, and it would be inequitable, to put it mildly, to permit the latter, in its insolvent condition, to require the trustee to deliver up these bonds without provision being made for the payment of the annuity.

The decree of the city court is affirmed.